**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

| | | |
|---|---|---|
| **DAVID JORDAN, individually and on** | ) | |
| **behalf of all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 5:16-cv-04413** |
| | ) | **Honorable Irene C. Berger** |
| **MECHEL BLUESTONE, INC.,** | ) | |
| **and** | ) | |
| **DYNAMIC ENERGY, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**BRIEF IN SUPPORT OF MOTION TO ENFORCE MEDIATION AGREEMENT,**
**ENJOIN EX PARTE SETTLEMENTS, CERTIFY CLASS, AND APPROVE LIMITED**
**CLASS DISCOVERY**

The Plaintiff is seeking the enforcement of a Mediation Agreement that was signed by the

Parties to resolve this class action. The Plaintiff is requesting that the Court order the Defendants to

halt all ex parte communications with members of the agreed-upon class, that the Court set aside any

individual settlement agreements that the Defendants have reached through such ex parte

communications, and that the Court certify the class consistent with the Parties' agreement and

award fees and costs as set forth herein.

The Plaintiff and the Defendants signed a Mediation Agreement on December 5, 2016,

setting forth agreed-upon terms for per capita payments to class members. That Agreement also

resolved all other matters in the class action settlement apart from the class counsel attorney fee,

which was to be submitted to the Court by the Plaintiff. Before submitting the Mediation Agreement

to the Court, the Parties agreed to seek agreement on the number of class members by reconciling

their competing payroll information and class lists, to expedite issuance of a final order and the establishment of a common fund.

However, although the Defendants have not yet tendered an agreement as to the contested class members, the Defendants have taken advantage of this interim period to actively contact members of the agreed-upon class and to solicit side settlements of this class claim (and ostensibly releasing all other claims against the Defendants as well) for a sum that, upon information and belief, is less than the amount to which the class members would receive in settlement. The Defendants have been making these contacts without notifying the undersigned counsel beforehand or allowing the undersigned to advise the individuals about their rights to receive notice that a higher settlement figure is available through the agreed-upon class settlement. Because the protections for class members under Fed. R. Civ. P. 23(e) are violated by these contacts and by any agreements reached through them, the Plaintiff now seeks for the Court to approve the class settlement, to certify the class for purposes of settlement, to enjoin the Defendants from reaching such side agreements and to find that such agreements are void for their illegality in violation of Rule 23(e), as set forth more fully below.

Plaintiff moves to certify a class of approximately 120 employees who have suffered identical harms from Defendants' WARN Act violations when those employees incurred an employment loss on or around November 30, 2013 through December 30, 2013, or within a 90-day period encompassing those dates. The agreed-upon Class holds identical claims for identical remedies consisting of sixty days' pay and the consequent loss of benefits during that period. A Rule 23 class action is widely regarded, including within the Fourth Circuit, as the optimal legal process for resolving WARN Act claims. The agreed-upon class and its named representative satisfy all of Rule 23's requirements, and fulfill the objective and rationale for efficiently resolving such claims on a

class-wide basis.

## A.     <u>ARGUMENT</u>

**I.     FACTS AND LAW REGARDING ENFORCEMENT OF MEDIATION AGREEMENT AND INJUNCTION OF UNNOTICED SIDE-AGREEMENTS SETTLING CLASS CLAIMS**

**a.     Factual background**

On December 5, 2016, the Parties reached a Mediation Agreement with the assistance of Magistrate Aboulhosn, settling all class matters except for the questions of the number of class members and the amount of the reasonable attorney fee. *See* DE 17 (mediation agreement entered by Parties). That class settlement agreement was intended have the customary force of a class settlement until such time as the Court formally reviewed the terms and ordered the certification of the class and concurrently issued an order adopting or modifying the settlement after considered review. A material precondition and premise of entering the Mediation Agreement was that the Agreement purported to resolve this class litigation for a classwide settlement, subject only to review by this Court and notice to the Class of the right to opt out.

The terms of that Mediation Agreement expressly established that the damages and relief would be as follows:

    i.     Defendants agree to pay to each member of the class the sum of Ten Thousand, Two Hundred Fifty Dollars ($10,250.00), inclusive of attorneys' fees and costs. The members of the class will be determined upon further investigation and agreement of the parties. If the parties can't agree as to the exact members of the class, then any member in dispute will be resolved by the District Court.

    ii.     Defendants agree to pay to class counsel an administrative fee of Thirty-Thousand Dollars ($30,000.00) to administer the settlement.

    iii.     Defendants agree to pay to David Jordan a class representative fee of Fifteen Thousand Dollars ($15,000.00). This amount shall be in addition to his right to claim an individual member settlement amount.

    iv.     The parties agree that no County Commission fee is required as a part of this

settlement as the parties settled the matter without the need of a trial however the County Commission is not precluded from bringing its own cause of action for said fee pursuant to the WARN Act. 29 U.S.C. Section 2104.

v.      The parties agree that the sums payable herein, shall be paid in a lump sum by the Defendant no later than six (6) months from November 29, 2016, i.e. May 29, 2017. The class members shall have no alter than November 30, 2017 to claim their individual class share.

DE 17.

Subsequent to the entry of that Mediation Agreement, the Defense counsel and several class members have both separately notified the Plaintiff's counsel—and hence the Plaintiff takes it to be uncontested—that the Defendants have been contacting numerous members of the agreed-upon class, and have reached settlement agreements with possibly as many as 18 of the class members for amounts that are substantially lower than the per capita damages award that the parties agreed upon the Mediation Agreement.

The Plaintiff has learned through the investigation and discovery process that numerous class members are still currently employed by the Defendants at Dynamic or other mine sites. So, the Plaintiff invites the Court to consider the practical predicament faced by class members when they receive this type of phone call from their current or former boss (or his representative). Perhaps as many as 18 or more class members have received these calls inviting them to consider settling out of court for a sum that is appreciably less than the sum to which those miners are already otherwise entitled under the terms of the Mediation Agreement. The class members are now on notice that their current or former boss would prefer for them to opt out of the class preemptively—before they have had the chance to review the terms of the Mediation Agreement, or to review any appurtenant settlement or order that this Court may ultimately issue in this case.

**b.      Defendant's preliminary side-agreements settling class actions are invalid because they ignore Rule 23(e) requirements for court approval of settlement and notice to class**

The Defendant's side-agreements with various class members should be set aside because they are unfair and coercive as against the class members who entered them, and they are violative of Federal Rule of Civil Procedure 23(e) governing the entry of class settlement agreements. Rule 23(e) requires that the court must direct notice in a reasonable manner to all members of a certified class who would be bound by a proposed settlement. *See* Fed. R. Civ. P 23(e)(1). Rule 23(e) further provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). At the time that the Defendant entered the preponderance of these side-agreements, this class had only been settled on a temporary basis pending approval by the court. However, the validity of a temporary settlement class is not usually questioned. *See e.g. In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 31 Fed. R. Serv. 3d 845 (3d Cir. 1995) (the validity of settlement classes usually is not questioned).

The Defendants knowingly induced the Plaintiff to forestall seeking class certification by tendering the commitment to settle the class through the Mediation Agreement. The Defendants thereafter circumvented that settlement process by settling in side-agreements that the Defendant did not identify to the Court pursuant to Rule 23 (e)(3) and as to which the settling class members were not afforded the benefit of class notice under Rule 23(e)(1). The Defendants actions in those regards violate Rule 23(e)(1) and (3).

Furthermore, Rule 23(e)(2) establishes that "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Assuming that these side-settlement agreements include a mandatory release of claims including the right to be included in this class settlement as to which the Defendant had already signed, then this Court has authority under Rule 23(e) to deny those

side agreements because they are unfair, unreasonable, inadequate, and frankly fraudulent based on the Defendants efforts to induce class members to waive their important procedural and substantive rights under Rule 23. The Plaintiff urges the Court to vitiate those side-agreements on the basis of their violation of Rule 23(e)(2), in addition to Rule 23(e)(1) and (3).

While it had been the intention of the Plaintiff to forebear in submitting the Mediation Agreement to the Court for approval until such time as the parties had reached agreement on the class size and the common fund, the Plaintiff regrettably feels compelled to come to the Court at this time and seek to arrest the proliferation of these side agreements by invalidating those agreements. Alternately, at a minimum, the Plaintiff humbly beseeches the Court to temporarily enjoin the entry into force of those side-agreements until such time as the class members have the opportunity to receive and evaluate the written notice of the classwide settlement negotiated by the Parties and to opt out of that settlement should they wish to do so after receiving the full information and having the opportunity to consider the fairness of the settlement for themselves.

### c. The class settlement is fair, reasonable, and adequate for the members

The settlement reached by the class representative, David Jordan, and by his counsel, satisfies the Rule 23(e) requirements for being fair, reasonable, and adequate because it compensates the class members for all of the straight-time wages to which they would have been entitled at trial, as well as providing a limited additional value for the amount of overtime pay as to which they would have also been entitled to demonstrate their eligibility at trial. *See United Mine Workers of America Intern. Union v. Martinka Coal Co.*, 45 F. Supp. 2d 521, 527 (N.D. W. Va. 1999), *aff'd on other grounds*, 202 F.3d 717 (4th Cir. 2000) (finding that regularly-available overtime is appropriately included in the "final regular rate" that forms the basis for damages under the WARN Act).

Based on an extensive review of the payroll records during the years preceding the 2013 layoff, the Plaintiffs have ascertained that the per capita damages to which the class members would be entitled at trial may be as high as $10,250. The Defendants customarily required the Coal Mountain workers to serve eight hours per day, six days per week, for a total of 48 hours per week—40 hours of straight time (at the representative rate of $28.00/hour on a class-wide basis), and 8 hours at time and a half ($42.00/hour). The Plaintiff's payroll analysis indicates that, altogether, the workers typically earned 320 hours of straight-time pay at $28.00/hour and at least 64 hours of overtime during a regular two-month period in the applicable period, which equates to $8,960.00 in straight-time pay and $2,688.00 in overtime pay, for a total of $11,648.00 in per capita damages.

Accordingly, the Plaintiffs' total estimate of the per capita damages to which most class members would be entitled based on a success on the merits at trial would be approximately $11,648.00—with slight fluctuations upward or downward in proportion to a given class member's wage classification and work schedule. However, the Defendants contest whether the Plaintiff would be able to prove this amount of damages, and the settlement was accordingly negotiated in order to reach resolution promptly in lieu of the substantial delay and uncertainty that could have arisen at trial as to the specific amount of damages due to each class member.

**d.      The attorney fee is fair, reasonable, and adequate for the class and counsel**

The Plaintiff requests that the trial court award $9,100.00 per class member and the remainder as an attorney fee to Mountain State Justice, representing approximately 12% of the class award, or $1,150 per capita, as an attorney fee. The twelve factors for ascertaining the reasonableness of an attorney fee in the Fourth Circuit have been long established. *See Allen v. U.S.*, 606 F.2d 432, 435 (4th Cir.1979); *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 243 (4th

Cir. 2010) (applying *Allen* factors).  The Fourth Circuit "review[s] a district court's award of attorney's fees for abuse of discretion." *Grissom v. The Mills Corp*., 549 F.3d 313, 320 (4th Cir.2008).

The degree of success obtained is "the most critical factor in determining the reasonableness of a fee award." *Doe v. Chao*, 435 F.3d 492, 506 (4th Cir. 2006). The full list of *Allen* factors includes the following: (1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of other employment by the lawyer due to acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures imposed in the case, (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases.  *Allen*, 606 F.2d at 436 n. 1 (applied by *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010).)

The key uncontested facts applicable to the *Allen* factors in this case are the following. First and foremost, the class counsel have secured a degree of success that affords each class member an amount of damages equal to all of the straight time pay that they would receive over two months, plus a premium to reflect the contested value of overtime pay.  Second, class counsel have been involved for over two years, as of this briefing, in researching and developing WARN Act claims for the sizeable class of Bluestone workers who were laid off in violation of that Act.  Third, class counsel have had to defend numerous dispositive motions in multiple WARN Act claims before this court, entailing novel and difficult questions such as the statute of limitations applicable to a WARN claim in the Fourth Circuit, and the question of when the

employees of a parent company may be attributed to a subsidiary based on the parent's *de facto* control of the subsidiary for purposes of a WARN Act claim. Fourth, class counsel accepted this case on a contingent fee basis.

Fifth, there are hundreds of miners who have been laid off without severance pay by the Mechel Bluestone entities, and the class counsel have personally spent innumerable hours meeting with miners and traveling to mine sites throughout Wyoming, McDowell, and Raleigh Counties during the course of this litigation. The extensiveness of the payroll discovery and investigation necessitated to prove damages in a claim such as this is quite pronounced, and has required the class counsel Sam Petsonk to draw on his extensive experience in working with coal miners on employment cases, in order to assemble the record and ascertain the actual means and methods by which the parent corporations exercised control and organized the payroll relationships with their subsidiaries.

Sixth, the "undesirability" of these Bluestone WARN Act cases is apparent based on the political power the individual who is widely known to have controlled the Defendant companies—the governor-elect of West Virginia, James C. Justice. The class counsel, Mountain State Justice (MSJ), provide a valuable service to miners in a union operation such as the Bluestone mines in which millions of dollars of critical payments were evidently left on the table unclaimed and uncontested, and in which there was a risk that the statute of limitations could have run out before the class members were able to locate a legal outfit willing to take on this powerful interest. MSJ's commitment to taking on undesirable cases—many of which do not yield a fraction of the damages presented by the instant action—supports the reasonableness of this modest 12% attorney fee in this case that might well not otherwise have been filed had it not been for MSJ. Seventh, as noted above and below, the class counsel are experienced in

investigating and litigating class actions of this type, including employment and constitutional claims, and including having filed and litigated several WARN Act class actions against the Bluestone entities in this Court.

A contingent fee, and especially such a modest contingent fee as 12%, is a reasonable fee award in a matter such as this WARN Act dispute. The Fourth Circuit advises courts to recognize and respect the value that contingency fee arrangements provide, especially to those who otherwise have no access to legal representation. *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245–46 (4th Cir.2010) (applied by *Williams v. Old HB, Inc.*, No. 7:13-CV-00464, 2015 WL 127862, at *1 (W.D. Va. Jan. 8, 2015)). That concern is all the more forceful in this case in which the class counsel is a non-profit legal services organization that spends the majority of its time, including in this case, dealing with clients and class members who are without the means to pay a traditional retainer fee to secure access to legal representation on complicated workplace matters such as that presented by these WARN Act violations committed by Bluestone.

Attorney fees on the order of 33% are customarily determined to be reasonable in class actions. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award of 33 and 1/3 percent of total amount made available to class and determining that attorney's fees may be determined based on total fund, not just actual payout to the class); *see, e.g., Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *see also Camden I Condo. Association v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("attorney's fees awarded from a common fund shall be based on a reasonable percentage of the fund established for the benefit of the class"). Accordingly, the 12% fee in this case is well within the limits of reasonableness for fees, and the

per capita class award after assessing the fees represents more than two months of full wages for 40 hours of labor at straight-time wages for the workers in the agreed-upon class—nearly a full award of the maximum damages that could become due at trial.

## II.     RULE 23 IS THE APPROPRIATE METHOD FOR WARN ACT CLAIMS

"District courts have 'wide discretion in deciding whether or not to certify a proposed class,' and their decisions 'may be reversed only for abuse of discretion.'" *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993) (citing *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 728-29 (4th Cir.1989)).  Within the Fourth Circuit and elsewhere, courts have found that "[b]ecause WARN Act lawsuits are permitted only against employers with more than 100 employees, WARN actions are particularly amenable to class-based litigation." *See e.g. Cashman v. Dolce International/Hartford*, 225 F.R.D. 73, 90 (D. Conn. 2004) (cited approvingly in *Nolan v. Reliant Equity Investors*, LLC, 2009 U.S. Dist. LEXIS 69765 (N. D. W. Va. Aug. 10, 2009) (certifying a Rule 23(b)(3) class consisting of all individuals who worked at the AB&C Group facilities in Jefferson and Berkeley Counties, West Virginia, and Orange County, Virginia, and who lost their jobs when those facilities all closed in March, 2008.).

In a related matter, this Court recently certified a similar class action in a WARN Act claim against the same Defendant Mechel Bluestone.  *See* Mem. and Order, Civil Action No. 5:15-cv-03014, Docket Entry No. 42 (May 3, 2015) (Berger, J.) (approving class certification).

## III.    PLAINTIFFS' PROPOSED CLASS

Plaintiff's proposed class consists of:

All full-time employees of Mechel Bluestone and its subsidiaries or affiliates, who worked at the mining site known as Coal Mountain in Wyoming County, West Virginia, and who were laid off, reduced-in-force, or terminated as the result of a plant closing or mass layoff, from November 30, 2013 to December 30, 2013 or within a 90-day period encompassing those dates.

Based on the Mediation Agreement between the parties, Plaintiff requests that the Court certify the class as proposed above.

## IV. STATEMENT OF FACTS PERTINENT TO CLASS CERTIFICATION

In the months of November and December 2013, Defendants employed more than 100 employees, including Plaintiff, and owned several mining facilities that produced and prepared coal for sale at a mining site known as Coal Mountain in Wyoming County, West Virginia. The interrelated mining facilities that comprised Coal Mountain were under the *de jure* and *de facto* ownership and control of Defendant Mechel Bluestone ("Bluestone") as an employer.

Bluestone owned, controlled, operated, and maintained the Coal Mountain mining site through Bluestone's subsidiaries, chiefly known as Dynamic Energy and/or Justice Highwall Mining, but also including other subsidiaries known and unknown. *Cf.* DE 1 at ¶ 10. Coal Mountain was located on the mountaintops surrounding the R.D. Bailey Lake, which is a public recreational lake, marina, and campground located in the southwestern part of Wyoming County, West Virginia, near the Mingo County line. Bluestone operations on the Coal Mountain site included a surface mining component, a coal preparation plant, and an interrelated on-site underground mining facility known as Frontier Energy.

Plaintiff was employed at Bluestone's Coal Mountain Mine prior to his layoff in 2013. On or about December 30, 2013, the mine management communicated to the miners at Coal Mountain that they were being laid off for an indefinite period of time.

Effective no later than the 30-day period ending on or about December 30, 2013, at least approximately 120 employees were laid off by Defendants at Coal Mountain. Neither the Plaintiff, nor a representative of his collective bargaining unit of the United Mine Workers of America, received written notice that the employees would be laid off prior to the occurrence of

their layoffs in 2013.

## V. PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23

Rule 23 of the Federal Rules of Civil Procedure governs the institution of class actions in federal district court, requiring a two-step analysis to determine if class certification is appropriate. *See e.g. Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 101 (W.D. Va. 2000). The proponent of class certification must satisfy all four of the requirements of Rule 23(a) and one of the subsections of Rule 23(b). *Brown v. Nucor Corp.*, 576 F.3d 149, 152, (4th Cir. 2009); *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006).

Specifically, Rule 23 requires a plaintiff to demonstrate as follows for the maintenance of class actions:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is **so numerous that joinder** of all members **is impracticable**;
(2) there are **questions of law or fact common** to the class;
(3) the **claims or defenses** of the representative parties **are typical** of the claims or defenses **of the class**; and
(4) the representative parties will **fairly and adequately protect** the interests of the class.

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if: . . . (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23 (emphasis added). When these requirements are satisfied, the case should be allowed to proceed on behalf of the proposed class. *Cf. Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993) (citing *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 728-29 (4th Cir.1989)) (noting the district court's broad discretion in certifying a class).

Here, the Plaintiff is an affected employee as defined by 29 U.S.C. Sec. 2101(a)(5), for purposes of the WARN Act, because he is an employee who reasonably expected to experience an employment loss, and who did in fact experience an employment loss, as a consequence of a mass layoff ordered by Bluestone. Plaintiff and Bluestone's other aggrieved and affected employees experienced a common employment loss as a result of the 2013 mass layoff, in which they were laid off for a period exceeding six months.

The Class Members have minimal interest in controlling the litigation individually because the scope of relief is narrowly circumscribed by the statute, being generally limited to back pay, benefits, interest, fees, and costs. *See* 29 U.S.C. Sec. 2104. Thus, individual control could not yield materially distinct types of relief.

### a. Numerosity: The Class Satisfies Rule 23(a)(1)'s Numerosity Requirement.

The Class Members are so numerous that joinder of all Class Members is impracticable because it is alleged that Defendants laid off approximately 120 employees in violation of the WARN Act. Putative Class Members are distributed geographically across several southern counties in the State of West Virginia.

"Impracticality of joinder is not determined by a numerical test alone." *Christman v. American Cyanamid Co.*, 92 F.R.D. 441, 451 (N.D.W. Va. 1981) (citing *Ballard v. Blue Shield of Southern West Virginia*, 543 F.2d 1980 (4th Cir. 1976); 1 HERBERT NEWBERG & ALBERT CONTE, NEWBERG ON CLASS ACTIONS § 3.06 (3d ed. 1992). "Factors relevant to the evaluation

of numerosity include . . . the negative impact on judicial economy if individual suits were required." *Black v. Rhone-Poulenc, Inc.*,173 F.R.D. 156, 160 (S.D.W. Va. 1996) (Haden, C.J.) (quoting *United Brotherhood of Carpenters & Joiners of America, Local 899 v. Phoenix Assocs., Inc.*, 152 F.R.D. 518, 522 (S.D.W. Va. 1994)); *see also* NEWBERG & CONTE, *supra*, § 3.06. Because plaintiffs under the WARN Act may only receive a limited amount of statutory damages, akin to a liquidated damages payment, it would have a needless and a negative impact on judicial economy if these claims –that have essentially identical facts and necessarily identical relief– were tried in separate cases.

      **b.**     **Commonality: the Class Satisfies Rule 23(a)(2)'s Commonality Requirement Because The Class Members Share Common Facts And Legal Issues.**

There are questions of law or fact common to the Class Members that predominate over any questions affecting only individual Class Members. As noted above, "[b]ecause WARN Act lawsuits are permitted only against employers with more than 100 employees, WARN actions are particularly amenable to class-based litigation." *See e.g. Cashman v. Dolce International/Hartford*, 225 F.R.D. 73, 90 (D. Conn. 2004) (citing *Finnan v. L.F. Rothschild & Co.*, 726 F. Supp. 460, 465 (S.D.N.Y. 1989)). "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).

Here, as noted above, Mechel Bluestone laid off approximately 120 employees within a thirty-day period during the months of November and December 2013, or within the 90 days surround that period, in connection with the reduction in force that affected Plaintiff's site of employment. Neither the Plaintiff, nor a representative of his collective bargaining unit of the

United Mine Workers of America, received written notice that these employees would be laid off prior to the occurrence of their layoffs in 2013.

Even if there were some minor factual variation among the putative Class Members, it would not render class certification inappropriate because the class claim arises out of a single mass layoff or plant closing. *Christman v. American Cynamid Co.*, 92 F.R.D. 441, 452 n. 28 (N.D.W.Va. 1981) ("When the [class] claim arises out of the same legal or remedial theory, the presence of factual variation is normally not sufficient to preclude class action treatment."); *see also Hosey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) ("Despite the presence of individual factual questions, the commonality criterion of Rule 23(a) is satisfied by the common questions of law presented."). Here, the class claims arise from exactly the same legal theories and same triggering event under the WARN Act.

The principal factual question in this case is whether Bluestone failed to provide written notice of the 2013 reduction in force. The principal legal question is whether Bluestone's failure to provide such notice constituted a violation of the WARN Act. Thus the ultimate question is whether Bluestone's failure to provide written notice 60 days prior to the plant closing or mass layoff constituted a violation of the WARN Act. The legal result and the consequent remedy –i.e. entitlement to 60 days of back pay and benefits– is essentially identical for each Class Member.

      c.    **Typicality: The Class Satisfies Rule 23(a)(3)'s Typicality Requirement Because the Claims of the Named Plaintiff Are Identical to Those of the Class Members.**

The claims and defenses of the Plaintiff are typical of the claims or defenses of the Class Members as a whole because the Class Members are similarly affected by Bluestone's wrongful conduct of failing to provide adequate notice in violation of the WARN Act. "When it is alleged

that the same unlawful conduct was directed at or affected both the named plaintiffs and the class

sought to be represented, the typicality requirement is usually met irrespective of varying fact

patterns which underlie individual claims." *Rhone-Poulenc*, 173 F.R.D. at 162 (quoting

NEWBERG & CONTE, *supra*, § 3.13). In other words, "precise, mirror-image identity" of injuries

is not required. *Kennedy*, 138 F.R.D. at 488 (quoting *International Woodworkers of America,*

*AFL-CIO v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1270 (4th Cir. 1981)); *see also,*

*e.g., Phoenix Assocs., Inc.*, 152 F.R.D. at 522 (stating typicality "requires that the representatives'

claims be typical of other class members' claims, not that the claims be identical").

The typicality rule assures that the class representatives' interests are "aligned" with those

of the class. *Kennedy*, 138 F.R.D. at 488. "This [typicality] factor and the commonality

requirement often merge." *Rhone-Poulenc*, 173 F.R.D. at 161. As noted by the Supreme Court,

these two prerequisites, along with the adequacy of representation requirement "serve as

guideposts for determining whether . . . maintenance of a class action is economical and whether

the named plaintiff's claim and the class claims are so interrelated that the interests of the class

members will be fairly and adequately protected in their absence." *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 626 n. 20 (1997) (quoting *General Telephone Co. of Southwest v.*

*Falcon*, 457 U.S. 147, 157 n.13 (1982)); [internal citations omitted] ("[T]here appears to be little

or no need for this [typicality] clause, since all meanings attributable to it duplicate requirements

prescribed by other provisions in Rule 23").

The claims and defenses involving the Plaintiff are typical of the claims and defenses

involving the Class Members as a whole because they all worked for Defendants and suffered a

common employment loss, as set forth above and in Plaintiff's First Amended Complaint.

"When it is alleged that the same unlawful conduct was directed at or affected both the named

Plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Black v. Rhone-Poulenc, Inc.*,173 F.R.D. 156, 162 (S.D.W. Va. 1996) (Haden, C.J.) (quoting 1 HERBERT NEWBERG & ALBERT CONTE, NEWBERG ON CLASS ACTIONS § 3.13 (3d ed. 1992)).

      **d.**      **Fair and adequate representation: The Class Satisfies Rule 23(a)(4)'s Adequacy Requirement Because the Plaintiff Has No Conflicts with the Class Members and Will Vigorously Prosecute their Interests.**

The Plaintiff will fairly and adequately protect the interest of the Class Members because Plaintiff has no conflict with other Class Members and he has demonstrated his commitment to this claim by researching his rights and seeking counsel, and because Plaintiff is represented by counsel who are competent and experienced. Plaintiff and his counsel have demonstrated their zeal in bringing this case even after the limitations period asserted by the Defendants had elapsed and the workforce had apparently given up hope on ever securing payment for this layoff. Nevertheless, the Plaintiff and his counsel litigated this claim aggressively and restored the ability of this class and similarly-situated miners at other operations, to come forward and secure the much-needed two months of severance pay that were illegally withheld from them during a time of painful economic contraction and scarce job opportunities across the areas where the class members reside.

"When assessing the class representatives' ability to adequately represent the interests of the class, the Court must consider the abilities of both the attorneys who represent the class representatives, and the class representatives themselves." *Rhone-Poulenc*, 173 F.R.D. at 162 (quoting *Phoenix Assocs., Inc.*, 152 F.R.D. at 523)). "[T]he two factors that are now predominantly recognized as the basic guidelines for the Rule 23(a)(4) prerequisite [as to representative plaintiffs] are (1) absence of conflict and (2) assurance of vigorous prosecution."

Id. (quoting NEWBERG & CONTE, *supra*, § 3.22).  Regarding adequacy of class counsel, "courts consider the competence and experience of class counsel, attributes which will most often be presumed in the absence of proof to the contrary." *Id.*  Here, the class counsel have experience both in class action litigation generally, and in employment and mining-related litigation specifically.

In this case, the named Plaintiff's interests are clearly aligned with those of the Class Members.  The class representative in this case does not have interests which are antagonistic to the interests of the class as a whole.  Rather, the named representative and the other Class Members have a common interest in seeing that the workforce writ large receives the full complement of wages and benefits that they are due under the WARN Act —if the damages are not due to a class entirely, then they are not due to the class representative.

Plaintiff's counsel are employed by Mountain State Justice, Inc. a non-profit law firm that represents low-income and working-class persons, and have represented clients in numerous other class actions, including several class actions filed under the WARN Act.  Bren J. Pomponio, an attorney practicing law at Mountain State Justice in Charleston, West Virginia, has been a member of the West Virginia Bar since October 1998, and has served as class counsel in more than a dozen cases both in the United States District Court for the Southern District of West Virginia and West Virginia state courts.  He is admitted to practice before the West Virginia Supreme Court of Appeals, the United States District Courts for the Southern and Northern Districts of West Virginia.  He graduated from the West Virginia University College of law in the top three in his class, graduated Order of the Coif, was Managing Editor of the West Virginia Law Review, and served as a law clerk for both the Honorable Joseph R. Goodwin and the Honorable Charles H. Haden II, Chief Judge of the United States District Court for the Southern

District of West Virginia.

Sam Petsonk is an attorney practicing law at Mountain State Justice in Charleston, West Virginia, and has held legal fellowships through the Skadden Fellowship Foundation and the American Bar Association's Steiger Fellowship for Consumer Protection. Sam has been a member of the West Virginia Bar since April 2014, and regularly represents coal miners in safety grievances and various employment cases and class actions regarding employment and civil rights (educational access, search-and-seizure). He is admitted to practice before the West Virginia Supreme Court of Appeals and the United States District Court for the Southern District of West Virginia. Accordingly, Plaintiff's counsel are qualified to conduct this litigation.

Thus, the Plaintiff has no conflicts with the Class Members and he has demonstrated his ongoing commitment to vigorously pursuing this matter with competent representation on behalf of the putative Class, and altogether satisfies the requirements of Rule 23(a)(4).

## B. CONCLUSION

For the reasons set forth above, the Plaintiff humbly requests that the Court enjoin the Defendants from entering ex parte settlement agreements with members of the agreed-upon class and that the Court set aside any such settlements that the Defendants have already signed until such time as the members of the agreed-upon class have the opportunity to receive notice of and decide whether to opt in or out of the class settlement.

Further, as set forth herein, a class action is superior to all other available methods for the fair and efficient adjudication of this controversy because (a) joinder of all Class Members is impracticable, (b) many of the Class Members are likely unemployed and not in a position to retain counsel, and (c) each individual Class Member has suffered damages that are merely modest, principally the loss of two months of pay and benefits. Therefore, there will be no

difficulty in the management of this class action and concentration of the claims in this forum will promote judicial economy and a fair result for the class members. For the foregoing reasons, Plaintiff respectfully requests that the Court certify the proposed Class as defined above, and award the Plaintiff 30 days for class discovery in order to resolve any dispute about the class membership.

Additionally, the Plaintiff requests that the Court approve the attorney fee requested by the Plaintiff as set forth herein, and if the Court approves the settlement, order the issuance of notice to the class regarding class certification and settlement.

Plaintiff,
**David Jordan,**
By counsel:

/s/ Samuel B. Petsonk
Samuel B. Petsonk (WVSB # 12418)
Bren J. Pomponio (WVSB # 7774)
Mountain State Justice, Inc.
1031 Quarrier Street, Suite 200
Charleston, West Virginia 25301
(304) 344-3144
Fax: (304) 344-3145
Email: sam@msjlaw.org
        bren@msjlaw.org

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

DAVID JORDAN, individually and on )
behalf of all others similarly situated, )
)
       **Plaintiff,** )
)
       **v.** )    **CASE NO. 5:16-cv-04413**
)    **Honorable Irene C. Berger**
MECHEL BLUESTONE, INC., )
and )
DYNAMIC ENERGY, INC., )
)
       **Defendants.** )

## CERTIFICATE OF SERVICE

I certify that I filed the **BRIEF IN SUPPORT OF MOTION TO ENFORCE MEDIATION AGREEMENT, ENJOIN EX PARTE SETTLEMENTS, CERTIFY CLASS, AND APPROVE LIMITED CLASS DISCOVERY** today using the CM/ECF system which will send notification of such filing to all CM/ECF participants, including John Hussell and Andrew Ellis.

/s/ Samuel B. Petsonk
Samuel B. Petsonk (WVSB # 12418)
Mountain State Justice, Inc.
1031 Quarrier Street, Suite 200
Charleston, West Virginia 25301
(304) 344-3144
(304) 344-3145 (fax)
sam@msjlaw.org
bren@msjlaw.org

Date: December 20, 2016