## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

DAVID JORDAN,

        Plaintiff,

v.                            CIVIL ACTION NO.  5:16-cv-04413

MECHEL BLUESTONE, INC.
and DYNAMIC ENERGY, INC.,

        Defendants.

### MEMORANDUM OPINION AND ORDER

The Court has reviewed the Plaintiff's *Motion to Approve Class Membership and Class Notice* (Document 35), the *Defendants' Response to Plaintiff's Motion to Approve Class Membership and Class Notice* (Document 36), and the *Plaintiff's Reply to Response to Motion to Approve Class Membership and Class Notice* (Document 38).   The Court has also reviewed the *Defendants' Motion to Seal* (Document 37).   Lastly, the Court has reviewed the Plaintiff's *Complaint* (Document 1) and all attached exhibits.   For the reasons stated herein, the Court finds that the Plaintiff's motion should be granted in part and denied in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff initiated this action by filing a Complaint in this Court on May 17, 2016.   The Plaintiff alleged that the Defendants, Mechel Bluestone, Inc., and Dynamic Energy, Inc., doing business at its Coal Mountain Surface Mine No. 1 in Wyoming County, West Virginia, violated the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101 et seq., by

failing to provide the sixty-day notice to employees of a pending layoff. (Compl. at 1.) According to the complaint, Mechel Bluestone owned several coal-producing mining facilities in Wyoming County, West Virginia, and employed more than 100 employees. (Compl. at ¶ 4-5.) Mechel Bluestone specifically owned its subsidiary, Dynamic Energy, Inc. ("Dynamic"), which operated and maintained the Coal Mountain Surface Mine No. 1. (*Id.* at ¶ 7.)

At the time of the allegations in the complaint, the Plaintiff had been employed in excess of eight and a half years. (*Id.* at ¶ 1.) On or about December 28, 2013, Todd Bradford, general mine foreman, at the time, "inform[ed] the outgoing miners, including Mr. Jordan, that they were laid off for an indefinite period of time." (*Id.* at ¶ 12.) Between approximately November 30, 2013, and December 30, 2012, at least 128 full-time miners, including the Plaintiff, were laid off at the Coal Mountain Surface Mine No. 1 (*Id.* at ¶ 13.) "Neither the Plaintiff, nor a representative of his collective bargaining unit of the United Mine Workers of America, received written notice that the employees would be laid off prior to the occurrence of their layoffs." (*Id.* at ¶ 14.) Further, the laid-off employees did not receive graduation days or holiday pay, and their medical and dental coverage was terminated. (*Id.* at ¶ 15-16.) According to the complaint, the Defendant Mechel Bluestone possessed *de jure* and *de facto* control over the Coal Mountain Surface Mine No. 1 site, ostensibly controlled by Dynamic.

On June 8, 2016, the Defendants filed a motion to dismiss (Document 4). On October 21, 2016, this Court entered its *Memorandum Opinion and Order* (Document 11) denying the motion to dismiss. Shortly after the decision denying the motion to dismiss, the parties mediated the case before Magistrate Judge Aboulhosn. As a result of the discussions with Magistrate Judge Aboulhosn on two different occasions, the parties entered into a *Mediation Agreement* (Document

17) on December 5, 2016. Pursuant to the mediation agreement, the Defendants agreed to settle the WARN Act claims regarding the putative members of the class. In late December 2016, however, the parties began to disagree about aspects of the mediation agreement, including who should be included in the class. Further, the Plaintiffs alleged that the Defendants were going outside of the mediation agreement and attempting to make settlement agreements with putative class members who had not been informed of the mediation agreement entered into by the parties.

In response to briefs filed by both parties, this Court held a combined pretrial conference and final settlement conference on April 19, 2017. During that hearing, the parties discussed issues concerning class certification and the side settlements entered into between the Defendants and potential class members. The Court informed the parties that it was prepared to certify the class and approve class notice, but the parties informed the Court that they still had not come to an agreement on whether certain employees of the Defendants' entities should be included in the class for purposes of settlement. The Court indicated that, if the parties could not decide who should be a part of the settlement and mediation agreement, the Court would make such a ruling after briefing on the issue was submitted.

## APPLICABLE LAW

*(A)  Federal Rule of Civil Procedure 23*

The certification of a class action is governed by Federal Rule of Civil Procedure 23 ("Rule 23"). Rule 23(a) states that:

> "one or more members of a class may sue" as "representative parties" if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

More succinctly, Rule 23(a) requires a potential class plaintiff to show numerosity, common questions of law or fact, typicality, and adequacy of representation. *Id*. Rule 23(a) "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and limits the class to those with claims "fairly encompassed by the named plaintiff[]." *Dukes v. Walmart Stores*, 131 S.Ct. 2541, 2550 (2011), quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982). Rule 23(a) is not a "mere pleading standard." Rather, the rule requires that "[a] party seeking class certification must affirmatively demonstrate his compliance," by being "prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id*. at 2551.

A plaintiff seeking class certification must satisfy all of the requirements of Rule 23(a), as well as one of the subsections of Rule 23(b). *Brown v. Nucor Corp*., 576 F.3d 149, 152 (4th Cir. 2009); *Thorn v. Jefferson-Pilot Life Ins. Co*., 445 F.3d 311, 318 (4th Cir. 2006). Here, the Plaintiff seeks class certification under Rule 23(b)(3), which requires that the Court determine that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The four factors for courts to consider under Rule 23(b)(3) are:

> "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties of managing a class action." *Id*.

A district court has broad discretion to decide whether to certify a class action under Rule 23, but the Plaintiff bears the burden of proof in establishing that all requirements of Rule 23 are

met.  *Leinhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir. 2001), citing *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996); *Int'l Woodworkers of Am. V. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1267 (4th Cir. 1981).   At the class certification phase, the district court must "take a close look" at the "facts relevant to the certification question, and, if necessary, make specific findings" relevant to certification.   *Thorn v. Jefferson-Pilot Life Insurance Co.*, 445 F.3d 311, 319 (4th Cir. 2006), citing *Gariety v. Grant Thornton*, LLP, 368 F.3d 356, 365 (4th Cir. 2004).   These findings are necessary, even if "the issues tend to overlap into the merits of the underlying case."  *Id.*, citing *Falcon*, 457 U.S. at 160 ("[S]ometimes it may be necessary for the [district] court to probe beyond the pleadings before coming to rest on the certification question."); *Gariety*, 368 F.3d at 366.

   2.  *The WARN Act, 29 U.S.C. §2102 et seq*

   In this case, the alleged "common question of law or fact" raised by the Plaintiff falls under the WARN Act, 29 U.S.C. §2102 *et seq*.  The WARN Act requires employers to provide sixty (60) days written notice of a mass layoff to affected employees or their collective bargaining representative. 29 U.S.C. §2102(a), (a)(1).   Under 29 U.S.C. §2101(a)(3), a "mass layoff" is a reduction in force which "(A) is not the result of a plant closing; and (B) results in an employment loss at the single site of employment during any 30-day period for"… "(I) at least 33 percent of the employees …" and "(II) at least 50 employees …" 29 U.S.C. §2101(a)(3).   Part-time employees are not considered in determining whether a mass layoff has occurred.  *Id.*

   The WARN Act defines an employer as "any business enterprise that employs—(A) 100 or more employees, excluding part-time employees; or (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime) …"  29 U.S.C.

§2101(A)(1)(a)-(b). Department of Labor regulations stipulate that "[u]nder existing legal rules, independent contractors and subsidiaries which are wholly or partially owned" by a corporate parent "are treated as separate employers or as a part of the parent or contracting company" based on "the degree of the independence from the parent." 20 C.F.R. §639.3(a)(2). "Some of the factors" for courts to use in determining whether a subsidiary and a parent constitute a common employer are "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." *Id*.

Whether the Coal Mountain Surface Mine No. 1 at issue in this case constitutes a "single site of employment" is a mixed question of law and fact. *Davis v. Signal Int'l Texas GP*, 728 F.2d 482, 485 (5th Cir. 2013.) While the WARN Act does not define "single site of employment," Department of Labor regulations provide interpretive guidance. A "single site of employment" can refer to a "single location" or a group of contiguous locations." 20 C.F.R. §639.3(i)(1). The general rule is that "separate facilities are separate sites." *Davis*, 728 F.2d at 485, citing 54 Fed.Reg. 16042, 16050 (Apr. 21, 1989). Of particular relevance to this case, the regulations indicate that "[s]eparate buildings or areas which are not directly connected or in immediate proximity" may constitute a single site of employment, "if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment." 20 C.F.R. §639.3(i)(3). By contrast, "[n]on-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site." 20 C.F.R. §639.3(i)(4). Similarly, "[c]ontiguous buildings owned by the same employer which have separate management, produce different products, and have separate workforces are considered

separate sites of employment." 20 C.F.R. §639.3(i)(5). The Department of Labor regulations also note that "[t]he term 'single site of employment' may also apply to truly unusual organizational situations where the [preceding paragraphs] do not reasonably apply." 20 C.F.R. §639.3(i)(8).

## DISCUSSION

On April 19, 2017, the Court held a hearing in this action and verbally approved the motion to enforce the settlement agreement reached by the parties. The Court also verbally certified the class to the extent possible at that time and instructed the parties to attempt to come to an agreement on who should be included in that class. The Court has analyzed the proposed settlement pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) and preliminarily finds that the prerequisites for a class action under Federal Rule of Civil Procedure 23 have been satisfied and that the class should be certified. Specifically, the Court finds that (a) the Class certified herein numbers at least hundreds of persons, and joinder of all such persons would be impracticable; (b) there are common questions of law and fact to the class, and those common questions predominate over any questions affecting any individual class member; (c) the claims of the Plaintiff are typical of the claims of the class he seeks to represent for the purposes of this mediation agreement; (d) a class action on behalf of the class is superior to other available means of adjudicating this dispute; and (e) the Plaintiff and class counsel are adequate representatives of the class.

The only remaining issues to consider concerning class certification are whether employees of Dynamic Energy – Justice Highwall Mining ("Justice Highwall") who worked at the Coal Mountain Surface Mine should be part of the class, and whether putative class members with

whom the Defendants entered into settlement agreements outside of the Mediation Agreement should also be included in the class.

The Plaintiff argues that the Justice Highwall employees should be included as members of the class. He asserts that the class was clearly intended to include the Justice Highwall employees from the filing of the complaint, and that this was clearly expressed. The Plaintiff contends that the Justice Highwall employees who worked at Coal Mountain are part of a "single site of employment that is expressly named and defined in the complaint and briefing." (Pl's Motion to Approve Class at 2.) The Plaintiff argues that the certain Justice Highwall employees who should be included in the class were employed and directly supervised by the employees of Dynamic and were simultaneously laid off with the other Coal Mountain employees, therefore subjecting them to the de facto control of the Defendants. According to the Plaintiff, the Justice Highwall employees were employed at a single site of employment at Coal Mountain and were laid off in the reduction of force at issue here and are, therefore, eligible to be members of the class action.

The Defendants respond that the Justice Highwall employees should not be included as putative class members. The Defendants first argue that Justice Highwall is not a party to this proceeding, and "there is nothing in the record suggesting that Justice Highwall meets the definition of an 'employer' for purposes of the WARN Act," thus excluding the Justice Highwall employees from the class. (Defs.' Resp. at 2.) They further contend that the Mediation Agreement does not mention Justice Highwall, and that not all of Justice Highwall's employees worked at the Coal Mountain site. Given these circumstances, the Defendants assert that the

Plaintiff has failed to appropriately state a cause of action against Justice Highwall under the WARN Act, and its employees should be excluded as members of the class.

The Court finds that the Justice Highwall employees should be included in the class. The Plaintiffs have appropriately proven, and the Defendants do not dispute, that the Coal Mountain Surface Mine No. 1 was a single site of employment for purposes of the WARN Act. Further, affidavits of Justice Highwall employees who worked at Coal Mountain submitted by the Plaintiffs indicate that those employees were terminated by Dynamic Energy along with the rest of the Dynamic employees at issue. (Varney Affidavit, Pl's Motion to Approve Class Ex. 2.) Although the Defendants argue that the Plaintiffs failed to allege this in their complaint, the complaint specifically states that "[a]ll of the employees at the Coal Mountain Surface Mine No. 1 site— including those that the defendants referred to as employees of 'Dynamic Energy – Justice Highwall Miner,' were engaged in a common operational purpose, under common management, used common equipment, and were under Bluestone's *de facto* and *de jure* management, maintenance, and control." (Compl. at ¶ 10.) Given this allegation in the complaint, and given that there is no dispute that Coal Mountain was a single site of employment, the Court finds that the Justice Highwall employees included in the layoff at the Coal Mountain site should be included in the class and are entitled to full relief under the terms of the settlement agreement.

Further, the Court finds that the individuals with whom the Defendants reached a settlement prior to class certification are not entitled to further compensation under the settlement agreement. The Plaintiffs assert that approximately forty-two verifications have been received stating that those individuals who reached an $8,000 settlement with the Defendant were not informed of their rights pursuant to the settlement agreement in this litigation. However, the

Defendants have submitted copies of signed letters written to the miners, confirming prior telephonic conversations, and informing them that acceptance of an $8,000 settlement would "release any claims you may have for violation of the WARN Act, including the right to receive as much as Nine Thousand One Hundred Dollars ($9,100) in six (6) months . . . ." (Defs.' Resp in Opposition, Ex. 1) (Document 37-1.)[1] The Defendants also submitted signed and dated releases that were executed after the correspondence referenced above for every employee who accepted the lesser settlement. (*Id.*, at Ex. 2A and 2B.)[2]

When read in conjunction, both the letter correspondence and the releases executed by the miners sufficiently show that the putative class members were given notice of what they would be giving up by taking the lesser settlement such that they were able to make an informed decision. As the Court stated in the April 19, 2017 hearing, "[i]f, however, [the potential class members] were, in fact, aware of the mediation settlement, the terms of that settlement, and they agreed to some other settlement, even though it might be less, then, of course, they've opted out and they would not be part of the class." (April 19, 2017 Hearing Transcript, at 10) (Document 34.) Given the Court's finding, and based on the evidence presented, the Court finds that the seventy-four miners who received $8,000 in settlement agreements prior to class certification knew of the class action and the amount they would be giving up and are, therefore, not entitled to receive additional damages pursuant to the mediation settlement agreement.

Lastly, the Court has reviewed the Mediation Agreement and finds the terms of the agreement to be fair, reasonable, and adequate subject to further consideration at the final

---

1 The Defendants filed their *Motion to Seal* (Document 37) accompanying their response, wherein they requested that Exhibits 1 and 2 be sealed because they "contain sensitive information such as addresses and social security numbers of individuals." The Court finds that this motion should be granted.

settlement hearing. The Court has also reviewed the Plaintiff's proposed class notice and finds that the proposed plan for class notice is appropriate according to Rule 23(c)(2) of the Federal Rules of Civil Procedure.

## CONCLUSION

WHEREFORE, after careful consideration, the Court **ORDERS** that the *Defendants' Motion to Seal* (Document 37) be **GRANTED** and the Plaintiff's *Motion to Approve Class Membership and Class Notice* (Document 35) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court **ORDERS** that the Plaintiff's motion be **GRANTED** insofar as it seeks to include the Dynamic Energy-Justice Highwall Miner employees as part of the class for a total of 118 individual minors named by the Plaintiff, and **DENIED** insofar as it seeks further damages for those miners who entered into settlement agreements with the Defendant prior to class certification.

The Court further **ORDERS** that the *Mediation Agreement* (Document 17) be **APPROVED** pending the final settlement hearing, and that the Plaintiff's proposed plan for providing class notice of the Mediation Agreement be **APPROVED** and dispensed by the Plaintiff accordingly. Finally, the Court **ORDERS** that the parties appear for a Final Settlement Hearing on **April 25, 2018, at 1:30 p.m.,** in Beckley, West Virginia.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 29, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA